126 So.2d 173 (1960)
Bessie BROWN
v.
PARISH OF EAST BATON ROUGE et al
No. 5142.
Court of Appeal of Louisiana, First Circuit.
December 19, 1960.
Rehearing Denied January 30, 1961.
Certiorari Denied March 3, 1961.
*174 Percy & Macmurdo, Edward W. Gray, Baton Rouge, for appellant.
R. Gordon Kean, Jr., John V. Parker, L. C. Parker, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, JONES and LANDRY, JJ.
JONES, Judge.
This is an action in tort wherein the City of Baton Rouge, the Parish of East Baton Rouge and one Lillian Pruyn are made parties defendant. The petition states that the plaintiff was injured as a result of a fall when the heel of her right shoe became caught in a crack in a sidewalk within the city limits of Baton Rouge and that the cracked condition of the sidewalk causing the fall was patently and obviously dangerous. She alleges actual notice to the parish and city and in the alternative constructive notice and further alleges that the city and parish failed to repair the defect or to post warning devices, although they were under duty to do so. The defendant Pruyn is sought to be held on the allegation that she is the owner of the property abutting the sidewalk where the accident occurred on the ground that she had actual notice of the defective condition of the sidewalk prior to the time of the accident and in the alternative that she had constructive notice thereof and that since she failed to repair said condition or place any device thereon to warn persons of the presence of the defect she is thereby liable under the provisions of Ordinance 758 of the parish council for the Parish of East Baton Rouge.
To this petition, all defendants filed exceptions of no right or cause of action. The exceptions filed on behalf of the City of Baton Rouge and the Parish of East Baton Rouge were sustained and the judgment dismissing the suit as to these defendants was read and signed in open court on the 18th day of February, 1960. The plaintiff appealed from that judgment.
The exceptions filed on behalf of the alleged abutting property owner, Lillian Morrison Pruyn, were also sustained but the judgment sustaining said exceptions and dismissing the suit was signed on the 28th day of April, 1960. The plaintiff did not appeal from this judgment so the abutting property owner is not before the court.
We are of the opinion that the District Court properly sustained the exceptions as to the City of Baton Rouge for the reason that under the plan of government of said parish and city, Section 3.01(b), the functions, powers and duties relating to sidewalks within the City of Baton Rouge were transferred by the city to the Parish. This was so held by this court in Brantley v. City of Baton Rouge, La.App., 98 So.2d 824, and Toppi v. Arbour, La.App., 119 So. 2d 621.
Defendant parish is herein contending that Duree v. Maryland Casualty Co., 238 La. 166, 114 So.2d 594 and Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793, overrule the jurisprudence established in Clinton v. City of West Monroe, La.App., 187 So. 561, as well as all subsequent cases recognizing the exception to the general rule of governmental immunity which holds municipalities liable for damages occasioned by failure to repair or maintain public streets and sidewalks. Counsel for defendant parish further argues the holdings in the Duree and Stephens cases, supra, recognize the judicial error committed in creating and establishing the exception which counsel argues was without foundation in its inception. Next, counsel for defendant Parish earnestly contends our holdings in Carlisle v. Parish of East Baton Rouge, La.App., 114 So.2d 62; Toppi v. Arbour, La.App., 119 So.2d 621, are not decisive of the question herein involved because not only was the issue herein raised not presented in the Carlisle case but also because the Stephens and Duree cases, supra, overrule the Carlisle and Toppi cases, supra.
In sustaining the contention of counsel for defendant parish, the trial court in oral *175 reasons assigned and dictated into the record asserted inter alia:
"In the case of Clinton versus City of West Monroe, 187 So. 561, the Court, in a passing upon the immunity of the City for liability growing out of such suits, in my opinion, assumed the position of a constitutional convention rather than a court and created a liability by Court decision, whereas, in fact, there was no real basis for such a determination. The fact that the Court said that the City was liable under certain circumstances under a well recognized exception to the general rule of immunity means nothing where there is no basis for such statement other than the statement of the Court to that effect."
There can be no question but that the views expressed by the District Judge are in conflict with those recently enunciated by us in Toppi v. Arbour, supra.
The forcefulness of counsel's argument has compelled us to re-examine the Duree and Stephens cases very closely and our most careful scrutiny thereof leads us to believe there is no foundation or basis to counsel's contention that the Stephens and Duree cases amount to a reversal of Clinton v. City of West Monroe, La.App., 187 So. 561, Carlisle v. Parish of East Baton Rouge, La.App., 114 So.2d 62 and Toppi v. Arbour, La.App., 119 So.2d 621. Our re-examination of the Duree and Stephens cases reveals said authorities hold simply that there is a difference between the state's constitutional immunity from suit and its immunity from liability vel non for the torts of its employees, agents or representatives committed in the course of performance of a governmental as distinguished from a proprietary function, the former being subject to waiver by the legislature whereas the latter may not be relinquished or waived.
Conceding both the Stephens and Duree cases, supra, were decided subsequent to our decision in the Carlisle case, we find nothing in either the Duree or Stephens cases indicative of intention to abandon or deviate from the well recognized exception to the general rule of governmental immunity from liability vel non from torts committed in the exercise of a governmental function, which has been established by the jurisprudence of this state and holds that such immunity does not exist with respect to municipalities sued in damages for alleged failure to repair and maintain streets and sidewalks.
Moreover, we pointed out in the Carlisle case, supra, the nature of the City-Parish form of government enjoyed by defendant and that thereunder the authority for street and sidewalks maintenance within the limits of the City was vested in the Parish Council by constitutional authority and such transfer of the powers and duties was held constitutional in State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477. In the course of the Carlisle opinion, we stated as follows [114 So.2d 68]:
"Although for administrative efficiency the city and parish street departments were consolidated and the responsibility for the maintenance of the city streets was vested in the parish council, we do not believe that this circumstance furnishes a sound reason for holding that the historic liability of the governing authorities responsible for maintaining municipal streets in safe condition no longer obtains in the City of Baton Rouge and that this activity is now shielded by governmental immunity. It is apparent that the same reasons rendering non-immune the negligent maintenance of municipal streets (see, e.g., Clinton v. City of West Monroe, La.App. 2 Cir., 187 So. 561, at page 564) apply equally whether the maintenance of the city streets is done by a combined city-parish street department or by the city itself. And, in fact, the parish council was held liable for street defects in Brantley v. City of Baton *176 Rouge, La.App. 1 Cir., 98 So.2d 824, certiorari denied."
In addition, the Duree and Stephens cases are not applicable herein for the reason the doctrine of constitutional immunity vel non (available to the state and normally available to parishes) is unavailable to defendant parish herein because of our ruling in the Carlisle and Toppi cases wherein we declared that the transfer from the city to the Parish of liability for failure to maintain streets and sidewalks did not affect the non-immunity from liability to maintain municipal sidewalks. Moreover, in our per curiam in the Toppi case, we specifically held that the Duree and Stephens cases were not applicable since they merely held the legislature could not, by waiving the state's immunity from suit, create a cause of action where none theretofore existed.
We subscribe to and reassert the following language employed in our per curiam in the Toppi case:
"The defendant Parish most persuasively applies for rehearing, upon the premise, inter alia, that, if the legislature cannot waive governmental immunity from tort liability (Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793; Duree v. Maryland Casualty Co., 238 La. 166, 114 So.2d 594), then neither can the courts.
"(15) However, what able counsel overlooks is that the immunity of a municipal governing authority and of most other governmental units is not based upon any constitutional provision, but is a judicially-created doctrine. Pugh, `Historical Approach to the Doctrine of Sovereign Immunity', 13 La.L.Rev. 476 (1953); Fordham and Pegues, `Local Government Responsibility in Tort in Louisiana', 3 La.L.Rev. 720 (1941). Article 3, Section 35, La.Constitution, LSA, simply provides that `Whenever the Legislature shall authorize suit to be filed against the State', certain procedures shall be followed and that `the effect of any authorization by the Legislature for a suit against the State shall be nothing more than a waiver of the State's immunity from suit'; it does not provide that municipalities or other governmental units are immune from tort liability. But cf. Art. 19, Section 26 La.Constitution.
"The tort liability of municipal governing authorities for damages resulting from the failure to keep streets and sidewalks in a reasonably safe condition for travel has traditionally not been subject to the defense of governmental immunity, nor to the prerequisite of legislative consent to suits to recover such damages. Carlisle v. Parish of East Baton Rouge, La.App. 1 Cir., 114 So.2d 62, and authorities therein cited. Thus the holdings of the Duree and Stephens cases, above-cited, have no application to the present appeal; for they simply held that due to the wording of Article 3, Section 35, the legislature was not empowered by waiving the State's immunity, to create a cause of action when non [sic] theretofore existed." [119 So.2d 631.]
It follows, therefore, the trial court erred in decreeing the principle of constitutional immunity from tort liability applicable to defendant parish herein.
The second point in support of the exceptions which was not passed upon by the District Judge is that even assuming it was the duty of the parish to maintain and keep the city streets in proper repair that said parish has by Ordinance 758 imposed the duty on the abutting property owner to maintain the sidewalks. Under the provisions of LSA-R.S. 13:3712, as amended by Act 316 of 1958, the court shall take judicial cognizance of local ordinances whenever certified copies of such ordinances have been filed with the Clerk of Court. It is stated by counsel for the parish in brief that the ordinances were so filed. It is true that Ordinance 782 was duly certified by *177 the Clerk but Ordinance 758 was not so certified and, consequently, we cannot take judicial cognizance of same.
The third and last ground advanced for sustaining the exception of no cause of action is that the sole proximate cause of the alleged accident was plaintiff's contributory negligence. It is alleged in the petition that about 1:30 P.M., on the 25th day of March, 1959, while the plaintiff was walking in a northerly direction on the sidewalk, just before she reached the point where the sidewalk described in paragraph 3 intersects France Street, the heel of her right shoe became caught in a crack in the sidewalk causing her to fall and that the cracked condition of the sidewalk which caused her to fall, in the manner previously described, was patently and obviously dangerous. The plea of contributory negligence is an affirmative defense and, while it may be presented through exceptions triable on the face of the petition, the exceptions should not be sustained unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is predicated. McCullin v. State, La.App., 94 So. 2d 585. In Burmaster v. Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans, La.App., 174 So. 135, 139, it was stated:
"We understand that doctrine to mean that an exception of no cause of action can never be meritoriously pleaded to a petition sounding in damages for personal injury or death on the ground of contributory negligence of the plaintiff, unless its charges are such as to exclude every other reasonable hypothesis other than that the sole and proximate cause of the accident was due to the contributing fault of the plaintiff."
While it is true in the present case the plaintiff has alleged that the defect in the sidewalk was patently and obviously dangerous, her counsel stated in oral argument that he did so because the courts have held that it was a prerequisite for recovery for the plaintiff to prove that the defect was patently and obviously dangerous and the courts of this State have so stated. Parker v. City of New Orleans, La.App., 1 So.2d 123. It could, of course, transpire that in the trial of this case the factual development could be such that the plaintiff would not be guilty of contributory negligence and, at any rate, in every case of this character which counsel for defendant parish has cited in support of the exception we note that the cases have been tried on the merits.
Accordingly, for the above and foregoing reasons, the judgment sustaining the exception of no cause and no right of action and dismissing the plaintiff's suit will be reversed and this cause is remanded to the District Court to be proceeded with in accordance with law. Defendant, being a public body, is relieved of the payment of costs except, of course, stenographic costs for taking testimony. LSA-R.S. 13:4521.
Reversed and remanded.
HERGET, J., recused.

On Application for Rehearing
PER CURIAM.
In his application for rehearing learned counsel for defendant quite correctly complained of our failure to take judicial cognizance of Ordinance 758 and Sections 170, 171, 172, 173 and 174 of Title 2 of the City Code of the City of Baton Rouge as amended by Ordinance Number 782, said error being predicated on the ground the record herein did not contain a certified copy of said latter ordinance.
Decisive of the issue raised by esteemed counsel is LSA-R.S. 13:3712, as amended by Act 316 of 1958, providing as follows:
"B. All courts of record in the state shall take judicial cognizance of the municipal ordinances and parochial ordinances *178 which may be enacted by governing authority of any town, city, municipality, or parish within their respective jurisdictions whenever certified copies of such ordinances have been filed with the clerk of said court. The clerk shall keep a record of such ordinances filed with him. It shall not be necessary to file more than one copy of any ordinance with the clerk in order that judicial cognizance be taken thereof. Such certified copies may be filed with the various clerks of court either by the proper custodian of the ordinances of respective town, city, municipality or parish, or any lawful officer of the court."
Prior to adoption of the foregoing statute, the jurisprudence of this state was settled to the effect that courts would not take judicial notice of municipal ordinances, proof thereof being required in the form of a copy duly certified by the clerk of the governing body which adopted the ordinance.
The statute mentioned above clearly stipulates that all courts shall take judicial cognizance of municipal ordinances whenever certified copies thereof have been filed with the clerk of each said court. The record in the case at bar (in the form of a certificate issued by the Clerk of the Nineteenth Judicial District Court) reveals that certified copies of ordinances 782 and 758 adopted by defendant City were in fact duly filed with the Clerk of said Court on February 23 and July 30, 1959, respectively. In view thereof, the trial court, as well as this tribunal, must take judicial cognizance thereof albeit only uncertified copies appear in the record of this case. Our error in refusing to take cognizance of said ordinances is attributable to the fact the words "Parish Clerk" appears on one of said ordinances and there was no certificate whatsoever on the other. The judicial notice required to be given such ordinances under the circumstances set forth in the statute relied upon by defendant obviously eliminates further proof or certification once a duly authenticated copy of an ordinance is filed of record with the Clerk of Court. To require further certification would obviously defeat the purpose intended to be accomplished by the statute and circumvent the intended remedial effect thereof. We therefore hold said ordinances properly before this court and take judicial cognizance thereof.
The issue presented by the ordinances in question were ably argued by learned counsel for defendant both in his original brief and argument before this court on the appeal of plaintiff herein.
We deem it unnecessary to set forth the terms of said ordinances in full, it being sufficient to say the provisions thereof clearly impose upon abutting property owners the duty and burden of repairing and maintaining sidewalks in the City of Baton Rouge.
The legal issue thus posed for resolution may be stated as follows: Does an abutting property owner who fails to discharge the burden of repairing and maintaining sidewalks, pursuant to the mandate of a municipal ordinance, thereby incur personal liability to third persons injured as a result of defects resulting from such failure?
Despite the force with which learned counsel for defendant argues the point, it is a settled issue that defendant Parish is liable for the repair and maintenance of sidewalks in the City of Baton Rouge, Carlisle v. Parish of East Baton Rouge, La.App., 114 So.2d 62; see also the reasons set forth in our original decree herein. In Brantley v. City of Baton Rouge, La.App., 98 So.2d 824 and Toppi v. Arbour et al., La.App., 119 So.2d 621, we held that in the absence of a statute or ordinance requiring an abutting property owner to repair and maintain streets and sidewalks, such owner was not responsible to third parties for injuries received as a result of defects therein. Moreover, while *179 we recognized in the Toppi case, supra, that a municipality may, by ordinance, impose liability on an abutting property owner for failure to repair or maintain sidewalks, we pointed out therein in unmistakable language that such result could obtain only in the event it were clearly, expressly and explicitly authorized by the legislature of this state.
There can be no doubt but that the ordinance presently before us clearly and without equivocation imposes upon abutting property owners in the City of Baton Rouge the onus of repairing and maintaining sidewalks. Therefore, more specifically, the issue thus presented is do the ordinances have the legal effect ascribed to them by defendant, namely, that of shifting primary tort liability for failure to repair and maintain sidewalks from defendant Parish to the abutting property owners within the city?
In this connection learned counsel for defendant strenuously argues we initially erred in interpreting Parker v. City of New Orleans, La.App., 1 So.2d 123 as holding that municipalities in this state are responsible in damages for accidents resulting from failure or neglect to repair and maintain sidewalks. Likewise, esteemed counsel contends we also erred in concluding that Betz v. Limongi, 46 La.Ann. 1113, 15 So. 385, is authority for the proposition that a municipality may not relieve itself of the foregoing obligation by shifting the burden of maintenance and repair to abutting property owners. It is the position of counsel for defendant that the Betz case, supra, did not hold the legislature may not grant municipalities power to shift tort liability to abutting owners in such instances and neither did it hold that a municipality has such authority, the holding therein being limited to a finding that the particular ordinance therein involved did not accomplish such result. Because of the insistence with which learned counsel has pressed the matter we have reexamined the Parker case, supra [1 So.2d 124], and note therein the following:
"The jurisprudence with respect to the liability of a municipality for injuries to pedestrians using its streets is well settled. See Wiltz v. City of New Orleans, 2 La.App. 444; Goodwyn v. City of Shreveport, 134 La. 820, 64 So. 762; Brown v. City of New Orleans, 7 La.App. 611; Collins v. Lyons et al., 9 La.App. 736, 120 So. 418; Millstead v. City of New Orleans, La.App., 146 So. 492; Carsey v. City of New Orleans, La.App., 181 So. 819; Ansley v. City of New Orleans, La. App., 168 So. 343; Suthon v. City of Houma, La.App., 146 So. 515; Lorenz v. City of New Orleans, 114 La. 802, 38 So. 566; and Miller v. City of New Orleans, La.App., 152 So. 141. These authorities establish the rule that, in order for a pedestrian to hold a municipality responsible for injuries occasioned by defects in its sidewalks, streets or highways, it must be shown (1) that the unsound condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent person and (2) that the municipality had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it."
The tenacity of counsel has also prompted us to further detailed analysis of Betz v. Limongi, 46 La.Ann. 1113, 15 So. 385, 386, which was a suit by an injured third party against an abutting property owner to recover damages for personal injuries sustained in a sidewalk fall. Plaintiff therein relied upon the provisions of Sections 8 and 36 of the New Orleans City Charter requiring abutting owners to keep sidewalks in repair as the basis for recovery and in rejecting said contention the Supreme Court of this state used the following language:
"Conceding that the defendant had failed to make repairs to the banquettes, and the council had ordered the banquette raised or lowered on the street on which defendant owned the *180 property, and that he had been served with proper notice, and had failed to comply with the same, still only a public duty would have been imposed upon him, the neglect to perform which could not render him liable to an individual who had been injured on the sidewalk or banquette in consequence of the failure to repair it, or to raise or lower it in conformity to the established grade. Dill.Mun.Corp. § 1028. In the case of Taylor v. Railway Co., 45 Mich. 74, 7 N.W. 728, the council of the city of Monroe had full and complete power over the streets; and the legislature had granted to said city, in its charter, the power to compel owners and occupants of property to repair the banquettes in front of same, and to keep them free from obstructions and snow and ice. The plaintiff in that case sued the defendant for an injury suffered by her in consequence of slipping and falling upon the ice which had formed on the sidewalk in front of premises occupied by defendant, who had failed to remove it in accordance with the city ordinance. Judge Cooley, the organ of the court, held: `An ordinance requiring all persons to keep their sidewalks free from ice imposes a purely public duty, and persons injured by slipping on the ice cannot bring private actions against the owner of the premises.' The syllabus of the case is brief, and is as follows: `Private actions do not lie for breach of public duty.' In the case of City of Hartford v. Talcott, 48 Conn. 525, the action was by the city against the defendant to recover the amount of a judgment against plaintiff for damages for an injury caused by ice upon a sidewalk in front of his premises. The city had been held liable because of the duty imposed upon it to keep the sidewalks in repair, and free from obstructions. The city council of Hartford had passed an ordinance requiring every owner or occupant of a building or lot bordering upon a street with paved or graded sidewalks to remove from the walk all snow and ice within a certain time, and imposing a penalty for the nonperformance of the public duty. The ordinance was passed in conformity to a general law of the state which placed upon municipal corporations the burden of keeping the highways in their respective limits in a reasonably safe condition. The court held that there was no grant of power to the city council to change the general law, and transfer the responsibility for injuries resulting from defects in the way from the public to an individual who is not directly responsible for their existence. And we can find no such power to transfer responsibility in the charter of the city of New Orleans, or in Act 114 of 1886. The charter and Act 114 only authorized the enactment of an ordinance requiring each proprietor fronting on a street to assist the city in keeping the banquette in repair, and to keep it to a certain grade; and such seems to be the intent of the legislature in relation to the city of New Orleans. No penalty is imposed, by fine, for the nonperformance of the public duty imposed. The work is to be done at the expense of the owner, if he fails to do it, with an additional burden of 6 per cent interest. By this legislation the city is not relieved from responsibility. It is still its duty to do the work, and, as it has no authority to shift the responsibility for failure to do it, it remains answerable for injuries resulting from negligence of the owner, on its own ommission to act.
"It is claimed by plaintiff that under section 36 of the city charter, quoted above, the obligation to keep the banquettes in repair imposed a duty upon the owner of the lot, in favor of all persons who use them, and that the neglect to keep them in repair, in consequence of which any one lawfully using the banquette is injured, renders *181 the owner liable to him in damages. But the duty imposed was not for the benefit of individuals, or a particular class of individuals. The duty was to the whole public of the city, to all its inhabitants, who own the banquettes and streets in common. The neglect to repair the banquettes was such a breach of public duty that its punishment must be in some form of public prosecution, and not by a suit for damages by an individual."
We interpret the pronouncements of the Supreme Court in the Betz case, supra, as holding clearly that unless expressly so authorized by the legislature of this state, no municipality may impose personal liability upon an abutting property owner for failure to discharge the municipally imposed burden of repairing and maintaining sidewalks. The rationale of the rule, as we understand it, is that primary tort liability in such instances rests in the municipality itself, that of the abutting property owner being merely a secondary liability owed to the City only and restricted to the obligation of payment of the cost of such repairs as may be made by the city when the property owner fails to comply with the ordinance creating his duty of maintenance.
The source of defendant's alleged authority to impose personal liability upon abutting property owners for injuries resulting from sidewalk defects is Section 20 of Act 169 of 1898, which provides that the City Council of the City of Baton Rouge shall have, inter alia, the following rights, powers and duties, to-wit:
"* * * to keep streets and crossings, bridges, canals and ditches clean and in repair, and to compel owners of property, or tenants, to keep their sidewalks [and neutral ground between the property line and the street curb line] clean and in repair * * *."
An additional source of said alleged authority is said to exist in the terms of Section 39 of Act 169 of 1898, as amended by Act 31 of 1904, the pertinent part of which reads as follows:
"All paved and unpaved streets in the city of Baton Rouge shall be kept in repair by said City, and all paved and unpaved banquettes in said City shall be kept in repair by the owners of real property fronting thereon."
We find nothing in the quoted portion of either statute indicative of legislative intent to permit defendant to shift the primary burden of tort liability quoad the matter at hand to abutting property owners. The language appearing therein falls far short of expressly authorizing imposition of tort liability upon a property owner who fails to comply with the provisions of an ordinance adopted in pursuance thereof. The statutes in question do, however, empower defendant to establish financial responsibility upon owners for the cost of maintenance and repairs which the owners shall fail or neglect to undertake or perform, which under the circumstances involved herein, is all that the ordinances in question can accomplish. Manifestly, there is a vast difference between legislation creating a public duty or obligation the breach of which is not actionable as held in the Betz case, supra, and legislation authorizing the transfer or shifting of tort liability for failure or neglect to perform such a duty.
The statutory provisions alluded to by defendant contain no penal provisions for their violation and are otherwise devoid of express legislative intent to impose tort liability upon property owners who fail or neglect to repair and maintain their sidewalks. Such authority, therefore, cannot properly serve as the predicate for a municipal ordinance purporting to establish the liability contended for by learned counsel for defendant herein.
We hold therefore that ordinance 758 and Sections 170, 171, 172, 173 and 174 of Title 2 of the City Code of the City of *182 Baton Rouge as amended by Ordinance 782 of said municipality is null, void and of no effort insofar as it purports, seeks, intends or proposes to create or impose personal liability upon abutting owners for injuries to third persons resulting from defects in sidewalks in said municipality.
The remaining issues presented by defendant's application for rehearing were disposed of in our original opinion herein.
Reversed and remanded.
Rehearing refused.
HERGET, J., recused.