417 So.2d 511 (1982)
Barry D. BURRIS, Plaintiff-Appellee,
v.
INSURED LLOYDS, et al, Defendants-Appellants.
No. 82-58.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
*512 William J. Doran, Jr., Baton Rouge, for defendants-appellants.
Gist, Methvin, Hughes & Munsterman, Victor H. Sooter, Gold, Little, Simon, Weems & Bruser, John F. Simon, Alexandria, for defendants-appellees.
Walter T. Gamard, II, New Orleans, Airhart & Copenhaver, Teddy W. Airhart, Jr., Baton Rouge, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
DOMENGEAUX, Judge.
This case was consolidated for trial with those of Dairyland Insurance Company v. David R. Stowell, et al, 417 So.2d 516 (La.App. 3rd Cir. 1982), and Select Insurance Company, et al v. Insured Lloyds, et al, 417 So.2d 516 (La.App. 3 Cir. 1982).[1] The cases have remained consolidated on appeal, and, as the law and relevant facts are common to all three suits, our opinion herein, where appropriate, is equally applicable to each. Additionally, we render separate judgments, where appropriate, in the other two consolidated cases.
*513 This case arises out of a head-on collision between an 18-wheeler driven by defendant, David Stowell, and a pickup truck driven by plaintiff, Barry Burris, which occurred on U. S. Highway 165, in LaSalle Parish, Louisiana. Also made defendants were Farmers Dairies (owner of the 18-wheeler), Select Insurance Company (Farmers Dairies' insurer), Lester Easterling (the driver of a vehicle directly preceding the 18-wheeler), Insured Lloyds (Easterling's insurer), and the State of Louisiana through the Department of Transportation and Development (State). After a non-jury trial the district court held in favor of plaintiff and against defendants' Easterling, Insured Lloyds, and the State insolido, and awarded plaintiff judgment in the amount of $304,119.74.[2] All other principal and incidental demands were dismissed. Defendants Easterling and the State appeal, and defendants Stowell, Farmers Dairies, and Select Insurance Company have answered those appeals. Plaintiff has not appealed nor has he answered the appeals. We reverse in part, affirm in part, and render.
The facts surrounding the aforesaid collision are essentially undisputed. For several miles prior to the accident, the defendant Easterling was preceding Stowell's 18-wheeler truck and trailer in a northerly direction on U. S. Highway 165. Some time prior to the date of the accident Mr. Easterling had installed on his vehicle (a flatbed truck used to carry tree stumps) twelve homemade metal pipes or bolsters which were placed at intervals around the perimeter of the flatbed in an upright or vertical position. These bolsters had at one time been attached by a single bolt to a sleeve, also installed by Mr. Easterling, to support said bolsters in their upright position. The bolsters were approximately four and one-half feet long, three and one-half inches in diameter, and weighed almost forty pounds.
Stowell was traveling at about 50 to 55 miles per hour and gaining on the Easterling vehicle as the two drove northward up a long straight hill on U. S. Highway 165. When Easterling's vehicle was still over 900 feet from the crest of the hill, and Stowell was some 60 to 80 yards following, Easterling's vehicle passed over a hump in the roadway allegedly causing one of the unsecured bolsters in the back of his truck to slip out of its sleeve directly into the path of Stowell's 18-wheeler. Stowell took evasive action by veering to his left into the southbound lane of traffic in order to miss the projectile. He was successful in avoiding the pipe, but as he proceeded back into his lane of travel he collided with plaintiff's vehicle which was proceeding in the opposite direction. Apparently,[3] plaintiff upon seeing the 18-wheeler moving into the southbound lane of traffic directly in front of him slammed on his brakes, went into a spin, and eventually collided with Stowell in the northbound lane of traffic. The only issues presented on appeal concern:
(1) The liability of the State through the Department of Transportation and Development;[4]
(2) Quantum.[5]

LIABILITY OF THE STATE
The trial judge in reasons orally assigned found that the hump the Easterling vehicle traversed was between two and three inches high, however, the record indicates that those who actually measured the hump, as opposed to those who approximated its height, found it was actually two inches rather than three inches in height. The trial judge held that despite the Department *514 of Transportation and Development's knowledge of same, it (the hump) was allowed to remain uncorrected for several weeks prior to the accident. The district judge further held that the hump created an unreasonable risk of injury (or was defective), and therefore found the State liable in negligence (finding that the State had knowledge of the hump) as well as in strict liability. We disagree.
In Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3rd Cir. 1975), this Court addressed the issue of the State's liability in negligence as follows:
"The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3 Cir. 1974); Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir. 1963); Mistich v. Matthaei, 277 So.2d 239 (La.App. 4 Cir. 1973); St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (La. 1964)."
When one's basis for recovery lies in strict liability rather than in negligence, the plaintiff is relieved of proving the State's knowledge, constructive or otherwise, of the hazardous condition or defect. Kent v. Gulf States Utilities, et al, 418 So.2d 493 (La. 1982). In this case it is not contested that the State had knowledge of the hump in question. Consequently, our review concerns itself with determining whether the hump created a hazardous condition or was defective.
"Unreasonableness" is a traditional standard for the determination of negligence. It is also fundamental to a finding of strict liability under La.C.C. Article 2317. Kent v. Gulf States Utilities, supra. Not every minor imperfection or irregularity in the roadway can be said to be patently dangerous (defective) or create an unreasonable risk of injury within the parameters of La.C.C. Articles 2315 and 2317. In the present case, we feel that the two inch hump in the roadway was not of such magnitude as to constitute a defect.
A review of the record and photographs contained therein reveal that the hump in question was a gradual hump, as opposed to a sharp protruding bump, apparently caused by compression of the pavement.[6] Although we recognize that such conditions are not particularly desirous and may even be annoying to motorists, we refuse to enlarge the scope of the state's liability and to hold it responsible whenever it can be shown that roadway conditions exist which are less than perfect because of minor irregularities in the road's surface. The record is void of any evidence tending to show that this particular hump in and of itself was obviously dangerous or created an unreasonable risk of injury to ordinary prudent motorists who pass over it.
In holding against the State the trial judge also held that defendant Easterling was liable to plaintiff in negligence as well as in strict liability.[7] He held that although Easterling had previously passed over the hump on numerous occasions, Easterling approached this particular stretch of roadway without exercising any added degree of caution, even though the vehicle he drove was patently dangerous and defective, i.e., the bolsters were improperly anchored to *515 the bed of his truck. The record reflects Easterling testified that quite a few of the bolsters were missing from the back of his truck indicating that he had lost other bolsters on the same strip of highway shortly before this accident. Easterling further admitted that he was concerned about the approaching hump not because it was particularly large or may cause him to lose control of his truck, but rather "... It was just a bump you got whenever you jumped over it fast."
In view of the above, we feel that the sole proximate cause for the bolsters coming loose resulted from the negligence of Easterling who failed to adequately secure the support pipe to the flatbed of his truck. We find no basis of liability on behalf of the State. The two-inch sloping hump present in this case does not amount to a defect, nor was it reasonably forseeable that anyone would take to the highways in a vehicle so patently defective that even the slightest jolt might cast these bolsters onto the roadway. Accordingly, we reverse that portion of the trial court's decision casting the State in judgment.

QUANTUM
The trial judge made the following factual determination concerning plaintiff's injuries:
"... I find that he has suffered permanent residual disability. I find that he suffered total disability for a long period of time. I find that he lost his ability to engage in the brick laying job that he was in at the time of the accident and I find that he suffered trauma over most of his person. He was trapped in a vehicle for a short while in great pain. He was removed then by ambulance from the scene to Hartner Hospital and then transported to Rapides Hospital in Alexandria where he was found to be suffering from fractures of the right femur, right tibia, right fibula and talus. He suffered a torn and lacerated spleen and a torn and lacerated liver. He experienced pulmonary insufficiency syndrome, collapsed lung and shocked lung. The shocked lung was a complication resulting from the many blood transfusions that he was given. As a result of this variety of injuries he had to be put on a respirator for a while, and it was necessary that he be operated on and given a tracheotomy. He was actually operated on on three separate occasions. His spleen was removed, and after that surgery they had to go back, as the doctor said, sort of unusually, because it appeared that all bleeding had been stopped and then after a short period of time they had to go back in to stop unexpected bleeding. He suffered a hernia as a result of all surgery that he had had and that had to be repaired. They had to put pins in his leg, some of which were not removed until May of 1980. He was in traction for a long period of time. He was in casts for a long period of time. All the medication and everything that he was given caused him to suffer stomach problems; an acid stomach or a peptic ulcer. He has extensive scars on his person. His right leg, his torso and his throat. His right leg is an inch and one-half shorter than the left leg. He suffered all kinds of bruises and other things that were incidental to this galaxy of problems that I have just described."
Additionally, plaintiff incurred $33,869.74 of medical expenses, lost income, and has suffered permanent residual disability.
Before an appellate court can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. See Reck v. Stevens, 373 So.2d 498 (La.1979) and the cases cited therein. We have closely reviewed the record before us, and find no clear abuse of the trial judge's discretion, therefore, we affirm the award for quantum.

DECREE
For the above and foregoing reasons the judgment of the trial court is reversed in part, affirmed in part, and recast as follows:
*516 It is Ordered, Adjudged, and Decreed that there be judgment herein in favor of the plaintiff, Barry D. Burris, and against the defendants Lester Easterling, and Insured Lloyds, jointly and in solido, in the sum of Three Hundred Four Thousand, One Hundred Nineteen and 74/100 ($304,119.74) Dollars, limiting Insured Lloyds to the full amount under its policy limits of (10-20-10) Ten Thousand and no/100 ($10,000.00) DollarsTwenty Thousand and no/100 ($20,000.00) DollarsTen Thousand and no/100 ($10,000.00) Dollars, with legal interest thereon from date of judicial demand until paid. Costs at trial and on appeal are to be assessed against Lester Easterling and Insured Lloyds.
It is further Ordered, Adjudged, and Decreed that the cost of taking of depositions of plaintiff's exhibit number 1 and number 2 depositions in the amount of Two Hundred Two and 50/100 ($202.50) Dollars be charged as costs of Court, and that the sum of Two Hundred and Fifty and no/100 ($250.00) Dollars each for the testimony of Doctor Gamburg and Doctor Edgerton be set as expert witness fees and, as such, be charged also as costs of Court.
It is further Ordered, Adjudged, and Decreed that there be judgment herein in favor of defendant, the State of Louisiana, through the Department of Transportation and Development, and against the plaintiff, Barry D. Burris, dismissing the plaintiff's claim against said defendant.
It is further Ordered, Adjudged, and Decreed that all third party demands filed in conjunction with this action are hereby dismissed.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
NOTES
[1] The first suit (# 82-56) was brought by the insurer of Burris' truck, Dairyland Insurance Company, to recover the sum of $1,231.66, the amount of the collision damages paid to Burris by Dairyland, and also for Mr. Burris' $250.00 deductible.

The second suit (# 82-57) was on behalf of Select Insurance Company to recover payments it made to Farmers Dairies under its collision coverage for the damages to the 18-wheeler driven by Mr. Stowell in the amount of $18,031.50.
This suit was filed on behalf of Mr. Burris to recover damages for personal injuries which Burris suffered in the accident.
All of the plaintiffs were defendants or third party defendants in one or more suits, and the State of Louisiana, through the Department of Transportation and Development was a defendant and third party plaintiff in all three suits.
[2] Insured Lloyds' liability is limited to the extent of its coverage in its policy of insurance issued to defendant Easterling.
[3] Stowell did not see plaintiff until immediately prior to impact, and Burris, who evidently is suffering from post traumatic neurosis, does not remember any facts concerning the accident.
[4] Since plaintiff has not appealed the judgment of the district court dismissing defendants Stowell, Farmers Dairies, and Select Insurance Company, that judgment has now become final, therefore, the issue of these defendants' liability is not now before us.
[5] Defendant Easterling's appeal addresses the issue of quantum only.
[6] Upon examining the photographs depicting the hump, it is almost impossible to ascertain any hump at all.
[7] Ibid. at 5.